In re Andrew C. DREW and Katherine M. Drew, also known as Kathy Drew, doing business as CDN Upholstery, Debtor.

Andrew C. Drew and Katherine M. Drew, Appellants,

v.

Randy L. Royal, Trustee, Appellee.

BAP Nos. WY–00–018, WY–00–036.
Bankr. No. 94–20907

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Jan. 5, 2001

5. The schedules in Kim's prior bankruptcy filed October 2, 1996 confirm the Buick had no equity.

Submitted on the briefs:*

Stephen R. Winship, Winship & Winship, P.C., Casper, Wyoming, for Appellants. Randy L. Royal, Greybull, Wyoming, for Appellee.

Before PUSATERI, BOHANON, and MICHAEL, Bankruptcy Judges.

## OPINION

PUSATERI, Bankruptcy Judge.

Debtors Andrew C. and Katherine M. Drew ("the Debtors") appeal the bankruptcy court's orders denying their motion to strike the opposition to their objection to three claims filed tardily by creditor Wyoming Medical Center ("WMC"), allowing two of WMC's tardy claims, and allowing twenty-seven claims filed tardily by the chapter 7 trustee for their bankruptcy estate, appellee Randy L. Royal ("the Trustee"). We affirm the orders denying the motion to strike and allowing WMC's late claims, but we reverse the order allowing the claims filed by the Trustee.

### I. Background

The Debtors filed a chapter 13 bankruptcy case in the summer of 1994, but it was dismissed. In the fall, they filed a personal injury action in a Wyoming state court. Later that same year, on December 29, they filed a chapter 7 petition, but they neglected to disclose the recently

---

* After examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal, and therefore grants the Appellants' request for a decision on the briefs without oral argument. *See* Fed. R. Bankr.P. 8012; 10th Cir. BAP L.R. 8012–1(a). The case is therefore submitted without oral argument.

filed personal injury action in their bankruptcy schedules. One of the Debtors indicated that their attorney simply used the same schedules for the chapter 7 as for the chapter 13 because the Debtor thought, "Nothing had changed." The Debtors were granted a discharge in the chapter 7 case, and it was closed as a no-asset case in October 1995.

In 1998, the Debtors' present counsel notified the Trustee of the personal injury action, which was still pending in state court. The chapter 7 case was reopened, and the Trustee was reappointed to administer the previously undisclosed asset. On April 20, 1998, an order was issued giving creditors ninety days to file proofs of their claims so that they could participate in distribution of funds from the bankruptcy estate. According to the claims register for the case, four claims were filed before that deadline, including one by WMC for $697.

In June 1998, the Debtors amended their schedule of exemptions to claim an exemption for damages they might recover in the lawsuit for lost wages. No objections to the exemption claim were filed. The following month, the Debtors' counsel filed an administrative claim for expenses incurred in prosecuting the lawsuit.

Apparently the state court indicated at some time that it intended to dismiss the personal injury action because the bankruptcy estate, not the Debtors, owned it, and the estate's representative was the proper plaintiff. After his reappointment, the Trustee asked the bankruptcy court to approve a settlement of the suit for $25,000, an amount sufficient to pay almost all of the unsecured debts the Debtors had listed in their bankruptcy schedules. The Debtors objected, and the court declined to approve the settlement, noting among other things that there was little evidence the amount being offered represented the true value of the suit. Despite the order denying approval of the settlement, the Trustee notified the bankruptcy court clerk's office that the estate had a surplus of funds to distribute, and he asked that creditors be re-noticed. Creditors were given until March 17, 1999, to file proofs of claim against the surplus. Another claim was filed before that deadline passed, and two more were filed after the deadline but before the end of that month. None of these claims are involved in these appeals.

The Debtors and the state court defendants thereafter participated in mediation and agreed to settle the state court suit for $40,000. The Trustee was excused from participating in the mediation at least in part because he had little knowledge of the facts or issues involved in the suit. The Debtors and their counsel relied on the amount of the claims filed by the March 1999 deadline in deciding to settle the suit. The Trustee supported the settlement, and the bankruptcy court approved it in September 1999. The Debtors' counsel then withdrew the claim for an administrative expense, based on the perception that the Debtors would get a substantial surplus from the estate because few claims had been filed by the two deadlines given for filing claims.

The Trustee contacted at least some of the creditors listed in the Debtors' schedules and asked them to file claims. WMC filed three more claims, and the Debtors objected to all three as untimely, and to one of them as not being their debt. The Trustee responded that WMC's claims were filed in time to permit payment, and so they should be allowed. The Debtors moved to strike the Trustee's response, contending that he had no standing to oppose their objections. The bankruptcy court denied the motion, ruling that the Trustee has standing in all areas affecting distribution of property of the estate and ensuring the creditors with valid claims are paid. Following a hearing at which only a non-lawyer employee appeared for WMC, the Trustee indicated WMC did not wish to pursue the largest of the claims (the one the Debtors alleged they did not owe), but the court overruled the Debtors' objections to WMC's other two tardily-

filed claims. The Debtors timely appealed both the denial of their motion to strike and the allowance of the claims.

Finally, in January 2000, the Trustee filed proofs of claim on behalf of the thirty creditors listed in the Debtors' schedules who had not yet filed claims, and he notified them of his filings. The Trustee had no personal knowledge of any of these claims, attached no supporting documentation to his proofs of claim, and based them solely on the listing contained in the Debtors' schedules. Not surprisingly, he did not complete the portions of the claim forms in which the filer is supposed to indicate the basis for the claim and the date on which it was incurred. According to one of the bankruptcy court's orders, these claims included one for "the Colorado Student Loan Program (National Recovery)" that the court disallowed because the creditor supplied documentation to the Trustee showing that the debt was incurred by the Debtors' son, and they did not owe it. Apparently, National Recovery had submitted a claim for a student loan to the Trustee in October after the surplus claims deadline had passed, with attached documentation showing the loan had been made to the Debtors' son. The Trustee apparently did not forward the claim to the bankruptcy court then, but instead, seems to have done so the following February, as shown by the court's claims register.

Three of the claims the Trustee filed were listed in the Debtors' schedules as disputed. A number of others were for collection agencies. The Debtors' schedules indicate several of these agencies were collecting for other listed creditors. At least one of those agencies had already filed a claim, but the Trustee still filed claims for creditors for whom the Debtors had indicated the agency was collecting. Furthermore, the Trustee filed separate claims for the same amount for another collection agency and the creditor for whom the Debtors said it was collecting. Five of the objections the Debtors' attor-

ney sent to the creditors were returned to him because the addresses used were no longer valid. One of them, though, was the one sent to the Colorado Student Loan Program, so a copy of either the Trustee's proof of claim or the Debtors' objection seems to have reached National Recovery, and that company's response led to the claim's disallowance.

After the hearing on the Debtors' objection to WMC's late-filed claims, another hearing was held on their objections to the thirty claims filed by the Trustee. A non-attorney representative of one of the creditors appeared and informed the court that the claim the Trustee had filed for that creditor was no longer owed. That claim was disallowed. As indicated, the court was informed that the Colorado Student Loan Program and National Recovery claims were in fact a single claim owed by the Debtors' son, and that claim was also disallowed. In some way not revealed in the record, the court was informed that another creditor alleged it had filed a claim in 1994, a time when the case was thought to be a no-asset one; discovery about that claim was ongoing and a hearing was scheduled for a later time, so the claim was not ruled on. No further information was provided about any of the other twenty-seven claims the Trustee had filed, except perhaps one of the Debtors' testimony that she thought when they prepared the bankruptcy petition that they owed the debts. Nevertheless, noting that the Debtors conceded they owed the debts when they filed their bankruptcy petition, the bankruptcy court concluded the claims were properly allowable as tardily filed claims and should be paid as such under 11 U.S.C. § 726(a)(3). The Debtors timely appealed that ruling.

After the Debtors' appeals were docketed, this Court issued an order procedurally consolidating them.

## II. Discussion

A number of provisions of the Bankruptcy Code and the Federal Rules of Bank-

ruptcy Procedure are relevant to the issues raised in these appeals. Section 502(b)(9) provides that when a claim is objected to, the court is to determine the amount of the claim and allow it except to the extent that "proof of such claim is not timely filed, except to the extent tardily filed as permitted under paragraph (1), (2), or (3) of section 726(a) of this title." 11 U.S.C. § 502(b)(9). Section 726(a), in turn, specifies the order in which claims are to be paid from the property of a chapter 7 estate. In pertinent part, it provides:

[P]roperty of the estate shall be distributed—

. . . .

(2) second, in payment of any allowed unsecured claim, other than a claim of a kind specified in paragraph . . . (3) . . . of this subsection, proof of which is—

  (A) timely filed under section 501(a) of this title;

  (B) timely filed under section . . . 501(c) of this title; or

  (C) tardily filed under section 501(a) of this title, if—

    (i) the creditor that holds such claim did not have notice or actual knowledge of the case in time for timely filing of a proof of such claim under section 501(a) of this title; and

    (ii) proof of such claim is filed in time to permit payment of such claim;

(3) third, in payment of any allowed unsecured claim proof of which is tardily filed under section 501(a) of this title, other than a claim of the kind specified in paragraph (2)(C) of this subsection; . . .; and

(6) sixth, to the debtor.

11 U.S.C. § 727(a)(2), (3) & (6).

Under this section and the facts of this case, two subsections of § 501 are relevant. Subsection (a) provides: "A creditor or an indenture trustee may file a proof of claim. An equity security holder may file a proof of interest." 11 U.S.C. § 501(a). Subsection (c) provides: "If a creditor does not timely file a proof of such creditor's claim, the debtor or the trustee may file a proof of such claim." *Id.* § (c). The Bankruptcy Rules establish the time limits that control whether a proof of claim has been filed timely or tardily. For a case, like this one, originally noticed as having no assets to distribute, Rule 3002(c)(5) provides that a notice that payment of a dividend is possible shall give creditors 90 days to file proofs of claim. Rule 3004 provides that when a creditor fails to file a proof of claim, a trustee may file a claim for the creditor "within 30 days after expiration of the time for filing claims prescribed by Rule 3002(c) . . . ." Fed. R. Bankr.P. 3004.

**A. WMC's Late–Filed Claims**

■ We first consider the Debtors' complaints about the allowance of WMC's two tardily-filed claims. The Debtors contend the Trustee had no authority to contest their objection to WMC's claims, so the court should have granted their motion to strike his response to it. In his response to the Debtors' objection to these claims, the Trustee pointed out that payment of tardy claims is authorized under 11 U.S.C. § 726(a)(2)(C) and (a)(3). He also stated that he was not aware the Debtors had relied on the filed claims in agreeing to settle the state court suit, and that he had not agreed the claims to be paid would be limited to those already on file. These assertions do not concern the substantive basis of WMC's claims, but only the factual circumstances surrounding the state court settlement, and the treatment of claims in general under the Bankruptcy Code. We think a case trustee can properly bring such matters to the court's attention. In its order denying the Debtors' motion to strike, the bankruptcy court noted that the Trustee is a fiduciary for all the creditors, and it ruled, "The trustee has standing in all areas affecting distribution of property of the estate and ensuring the creditors with valid claims are paid. Thus, he can

appear and be heard at a hearing concerning allowance or disallowance of a claim." We see nothing erroneous in these statements. The bankruptcy court's denial of the motion to strike will be affirmed.

█ The Debtors also complain that WMC's claims had to be disallowed because they were filed after the March 1999 deadline set by the surplus notice sent to the creditors. They base their argument here on a 1988 decision applying Federal Rule of Bankruptcy Procedure 3002(c)(6), *Venhaus v. Wilson (In re Wilson)*, 96 B.R. 257, 262–63 (9th Cir. BAP 1988). *Venhaus* does not support the Debtors' contention. The Debtors concede that the bankruptcy court had discretion under Rule 3002(c)(6) to allow claims that have been filed late, as WMC's claims were, but they contend that the court abused its discretion because they had relied on the amount of timely-filed claims in deciding to settle the state court lawsuit. However, since they accept that the court had discretion to allow late-filed claims, the Debtors could not reasonably have relied on an assumption that the court would not allow any claims that might be filed after they reached the settlement.

Moreover, Rule 3002 was amended in 1996 to make clear that the effect of filing a proof of claim tardily is governed by the Bankruptcy Code, not the Rule. *See* Advisory Committee Note to Rule 3002 (1996). Among other things, subsection (c)(6) was deleted from the Rule at that time. Consequently, decisions based on the wording of the Rule before 1996 no longer reflect the applicable law. Section 502(b)(9) of the Code indicates that tardily-filed claims are to be allowed if they are covered by § 726(a)(3). In a chapter 7 case like this one, claims tardily filed by creditors who had notice of the bankruptcy case are covered by § 726(a)(3). Section 726(a)(3) indicates that such claims are penalized by being subordinated to timely-filed ones, but are still to be paid before any surplus is distributed to the Debtors. The bank-ruptcy court properly allowed WMC's late-filed claims.

█ Finally, the Debtors apparently believe that trustees are not authorized to contact creditors directly about filing claims. However, they have cited and we have found nothing in the Bankruptcy Code or Rules that prohibited the Trustee from encouraging creditors at any time to file claims. Even more clearly, neither the Code nor the Rules provide that claims must be disallowed because the Trustee made such efforts.

B. Claims Filed Tardily by the Chapter 7 Trustee

█ Although §§ 502(b)(9) and 726(a)(3) mean that in chapter 7 cases, claims filed tardily by creditors are nevertheless to be paid from the estate prior to distribution to the debtor, a careful reading of §§ 501 and 726(a) indicates that claims filed tardily by a chapter 7 trustee are not entitled to be paid under the distribution scheme established by the Code. Claims filed timely by creditors are second in the scheme. *See* § 726(a)(2)(A). Those filed tardily by creditors are second if the creditor had no notice of the case but filed in time to permit payment of the claim, *see* § 726(a)(2)(C), but otherwise are third, *see* § 726(a)(3). It is important to note that the tardily-filed claims placed in the distribution scheme are only those filed under § 501(a)—that is, by creditors and indenture trustees. Claims filed under § 501(c)—that is, by the trustee or the debtor—are second in the scheme, but only if they are filed timely. No provision is made for the payment of claims filed tardily under § 501(c). Since the notice of a possible dividend was mailed to creditors in April 1998, giving them ninety days (or until July 1998) to file claims, under Rule 3004, the Trustee's period to file timely claims expired in August 1998. He did not file the twenty-seven claims for creditors until January 2000, clearly making them tardy and not eligible for payment under any provision of § 726(a). Consequently,

on the Debtors' objection, the claims should have been disallowed under § 502(b)(9).

Even before § 502(b)(9) was added to the Code in 1994, two circuit courts had held that Rule 3004 barred a debtor from filing a proof of claim after the Rule's time limit had passed, unless the debtor obtained an extension of time pursuant to Rule 9006(b)(1) on the basis of excusable neglect. *See In re Danielson,* 981 F.2d 296, 298 (7th Cir.1992); *Davis v. Columbia Constr. Co., Inc. (In re Davis),* 936 F.2d 771, 773–74 (4th Cir.1991); *see also Pioneer Inv. Servs. v. Brunswick Assocs.,* 507 U.S. 380, 387 n. 3, & 387–97, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) (rejecting "excusable neglect" standard applied in these cases, but not considering their interpretation of Rule 3004). Because the Rule applies to a trustee as well as to a debtor who files a proof of claim for a creditor, these decisions support our conclusion in this case. Another court has more recently relied on Rule 3004, *Danielson,* and *Davis* to support its decision to disallow claims filed by a trustee after the Rule's deadline (the court did not cite § 502(b)(9)). *See In re Nettles,* 251 B.R. 899, 900–02 (Bankr.M.D.Fla.2000). Section 502(b)(9) further solidifies the propriety of these decisions.

■ We note that other considerations also support our interpretation of the Code and Rules. The legislative history of § 501(c) states:

> The purpose of this subsection is mainly to protect the debtor if the creditor's claim is nondischargeable. If the creditor does not file, there would be no distribution on the claim, and the debtor would have a greater debt to repay after the case is closed than if the claim were paid in part or in full in the case or under the plan.

S.Rep. No. 95–989, at 61 (1978); H.R.Rep. No. 95–595, at 352 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5847, 6307–08. This indicates that Congress did not intend for trustees to file claims on behalf of all creditors listed in a debtor's schedules. Nothing in this case suggests any of the claims the Trustee filed were nondischargeable.

The view that Congress did not intend for trustees to engage in the wholesale filing of claims is also reinforced by the Bankruptcy Rules. Debtors are ordinarily required to file a list of their creditors and a schedule of their liabilities, *see* 11 U.S.C. § 521(1), but the schedule they file can be prima facie evidence of the validity and amount of the claims only in chapter 9 and 11 cases, and then only for claims not labeled as disputed, contingent, or unliquidated, *see* Fed. R. Bankr.P. 3003(b)(1). In other cases, only a proof of claim executed and filed in accordance with the Bankruptcy Rules qualifies as prima facie evidence of the validity and amount of the claim. *See* Fed. R. Bankr.P. 3001(f). The Debtors' schedules did not qualify as such evidence.

We note that this evidentiary effect seems reasonable for claims filed by creditors because they should ordinarily be familiar with the facts that make the debtor liable to them. At first blush, though, it seems rather surprising for claims filed timely on behalf of creditors by a case trustee, who would not usually have been involved in the events creating the liability, to be given the same effect. We question whether the Rules' drafters meant that the prima facie effect could be obtained simply by copying information from the debtor's schedules onto proofs of claim. If they had, they would have provided that the debtor's schedules alone were sufficient.

■ The factual circumstances in this case also demonstrate a variety of reasons why trustees should exercise caution in filing claims, as this Trustee did, on behalf of creditors who have twice been notified in writing—and apparently also orally encouraged by the Trustee—to file claims, but chose not to do so. The Trustee had no knowledge of the legal validity of or the actual amount owed on any of the claims,

and he apparently made little, if any, inquiry about them. One creditor informally responded to notice of the Trustee's claim with documents showing that the Debtors' son, not the Debtors, owed the debt. The only creditor who had a representative appear at the hearing on these claims reported that the Debtors no longer owed it anything. While the bankruptcy court did disallow these claims, the Trustee had no evidence (except perhaps one of the Debtors' testimony that she thought when they prepared their bankruptcy petition that they owed the debts) to show that the claims that were allowed were not also deficient for some reason.

Indeed, a review of the Debtors' schedules and the court's claims register indicates the Trustee probably filed some duplicate claims. Even though the Debtors' schedules indicated that a collection agency that had already filed a claim was collecting for other listed creditors, the Trustee still filed claims for the creditors for whom the Debtors thought the agency was collecting. The Trustee also filed separate claims in identical amounts for another collection agency and the creditor for whom the Debtors indicated it was collecting.

It is possible other claims the Trustee filed might not be enforceable against the Debtors, and therefore should have been disallowed under § 502(b)(1), for a reason the creditor's own proof of claim and supporting documentation, had they been filed, might have disclosed, such as the running of the applicable statute of limitations. Since some of the Debtors' objections to the claims were returned because the addresses used were no longer valid, those creditors apparently would not have received notice that the Trustee had filed claims on their behalf.

### C. Other Arguments

The Debtors may have asserted other arguments in their rather disorganized briefs. We have considered all the arguments as best we could and conclude that none of them that allege error in the orders denying the Debtors' motion to strike and allowing WMC's late-filed claims are convincing. Any of them that concern the order allowing the Trustee's late-filed claims are moot in light of our conclusion that the order must be reversed.

### III. Conclusion

For these reasons, the bankruptcy court's orders denying the Debtors' motion to strike and allowing WMC's late-filed claims are AFFIRMED, but its order allowing the tardy claims filed by the Trustee is REVERSED. The case is REMANDED for further proceedings consistent with this opinion.

### ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR REHEARING

This matter is before the Court on the Appellants—Debtors' motion for rehearing of this Court's Opinion filed December 15, 2000. The Debtors point out that the Trustee's traverse to their objection to the Wyoming Medical Center's late-filed claims was contained in the record on appeal (although it was not listed in the table of contents). Consequently, we have reconsidered and revised the portion of the opinion that dealt with the Debtors' motion to strike that traverse. However, we remain convinced that the bankruptcy court's denial of the motion to strike was not erroneous, and we conclude that the original disposition of the appeal was correct. Except for our revision of the first paragraph in section II.A. of the opinion, the Debtors' motion for rehearing is denied on the merits.

It is HEREBY ORDERED THAT:

(1) The motion for rehearing is GRANTED insofar as it addresses the Debtors' motion to strike the Trustee's traverse to their objection to the Wyoming Medical Center's late-filed claims;

(2) The motion for rehearing is DE-NIED as to the remainder of the relief requested; and

(3) The opinion dated December 15, 2000, is withdrawn, and the attached opinion is substituted in its place.